UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLOS ANTONIO JORGES
MENDEZ,

          Petitioner,

    v.

DIRECTOR IMMIGRATION AND
CUSTOMS ENFORCEMENT AND
REMOVAL OPERATIONS, MIAMI
FIELD OFFICE, et al.,

          Respondents.

_____/

Case No. 2:26-cv-470-KCD-DNF

## <u>ORDER</u>

Petitioner Carlos Antonio Jorges Mendez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Doc. 11.) For the reasons below, the petition is **DENIED**.

## I. Background

Mendez is a native of Cuba who entered the United States in 1984. (Doc. 1 ¶ 30.) In 2010, he was convicted of federal drug offenses and

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

sentenced to prison. (*See* Doc. 11-1.) Following his release in 2016, he was ordered removed from the United States. (Doc. 1 ¶ 33.) When that removal did not come to fruition, he was placed on an order of supervision. (*Id.* ¶ 34.)

On November 3, 2025, he attended a routine ICE check-in appointment and was detained. (*Id.* ¶ 36.) Months later, he filed this emergency petition for a writ of habeas corpus. ICE has given Mendez notice that it intends to remove him to Mexico. (*See* Doc. 11-1 at 25.) Still, Mendez argues his removal is not reasonably foreseeable and asks this Court to order his immediate release. (Doc. 1 at 5.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

The analysis begins with a jurisdictional challenge. Respondents argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction to even hear Mendez's plea because it arises from the "execution" of a removal order. (Doc. 11 at 3.) We need not spend long here. The Supreme Court has repeatedly cautioned that § 1252(g) is narrowly tailored to three discrete actions, and it does not operate as a blanket ban on habeas review for prolonged detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). Indeed, if the Government's sweeping interpretation were correct, *Zadvydas*—the seminal case where the Supreme Court held it could consider a habeas challenge to unlawful, prolonged immigration detention—would have been stopped in its tracks before ever reaching the merits. The Court is satisfied it has jurisdiction to decide whether Mendez's detention is lawful. *Zadvydas*, 533 U.S. at 688 (citing § 1252(g) yet concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

Respondents also argue that 8 U.S.C. § 1252(b)(9) bars judicial review. (Doc. 11 at 5.) Not so. The Eleventh Circuit has held that § 1252(b)(9) "only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Mendez is not challenging his removal proceedings—he

3

is challenging the antecedent detention. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at \*5 (S.D. Fla. Apr. 15, 2021).

That leaves the merits. Here, Mendez invokes the Supreme Court's decision in *Zadvydas v. Davis*. (Doc. 1 ¶ 42.)

A bit of statutory plumbing helps set the stage. When a removal order becomes final, the INA starts a 90-day clock. 8 U.S.C. § 1231(a). During that window, the government must keep the noncitizen detained. *Id.* § 1231(a)(2). If that initial period expires without a successful removal, the government has a choice: it may release the individual on supervision or keep them locked up. *Id.* § 1231(a)(6). Read literally, the statute places no outer limit on that continued confinement. But holding someone indefinitely is a constitutional non-starter. So the Supreme Court read a practical limitation into the text. The government, the Court held, may only detain a noncitizen for a period "reasonably necessary" to actually bring about their removal. *Zadvydas*, 533 U.S. at 701. And to give lower courts a workable yardstick, the Court drew a line at six months: any post-removal detention lasting six months or less is "presumptively reasonable." *Id.*

"In order to state a claim under *Zadvydas*," then, "the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant

4

likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Apply that framework here, and Mendez's claim immediately runs into a math problem: he simply has not been detained long enough. To trigger a *Zadvydas* inquiry, a noncitizen must be physically confined for more than six months. Mendez, however, has only been detained since November 3—leaving him well short of that mark. *See, e.g.*, *Rivera v. Hassell*, No. 4:15-01497-WMA-SGC, 2016 WL 4257692, at *3 (N.D. Ala. July 12, 2016) (finding the petitioner's removal period began to run when he was taken into ICE custody, not the day his removal order became final).

To bridge the gap, Mendez argues that the nine years he spent living in the community under an order of supervision should count toward the six-month clock. (Doc. 1 ¶ 42.) The premise of his claim goes like this: *Zadvydas* established a six-month "presumptively reasonable" limit on post-removal-period detention. (*Id.* ¶ 47.) Mendez points out that he was ordered removed in 2016, so his six-month clock expired over a decade ago, leaving ICE powerless to detain him now. (*Id.* ¶ 47.)

This argument makes little sense. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings*, 583 U.S. at 311.

Against that backdrop, it is illogical to run a clock designed to prevent indefinite imprisonment while a person is out living freely in the community. "Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).); *see also Ghamelian v. Baker*, No. CV SAG-25-02106, 2025 WL 2049981, at *4 (D. Md. July 22, 2025).

Because Mendez has not been physically detained for six months, his *Zadvydas* claim fails. *See Lopez v. Dir. of Enf't & Removal Operations*, No. 3:25-CV-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); , *Guerra-Castro v. Parra*, No. 1:25-CV-22487, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"). His legal challenge to the length of his detention is therefore premature, and the habeas petition must be **DISMISSED**. However, this dismissal is without prejudice to Mendez

refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions[2] and close the case.

**ORDERED** in Fort Myers, Florida on March 18, 2026.

Kyle C. Dudek
United States District Judge

---

[2] The Warden of Alligator Alcatraz moves to dismiss, arguing he is an improper Defendant. (Doc. 9.) Because Mendez is being granted no relief, the Warden's argument is a moot issue.

7